The bill is to foreclose a mortgage given by J. Edwin Ellor 
Sons, Incorporated, March 24th, 1924, for $17,000, assigned to the complainant to establish a line of credit and as security for past and future debts.
The mortgagor owned a tract of land in the borough of Point Pleasant Beach, extending from the sea westerly to, or near, the New York and Long Branch Railroad Company. The tract between Ocean avenue, the most easterly avenue, running parallel with the sea, and St. Louis avenue, the most westerly avenue on the tract, was laid out in building lots and plotted by lot numbers in blocks numbered on "a map made by R. White Morris, A.D. 1919, for J. Edwin Ellor."
The complainant's mortgage covers the land easterly of Ocean avenue to the sea, including the riparian rights, the lands west of St. Louis avenue and fifty-seven lots plotted on the map. All the lots mortgaged to the complainant were subsequently either sold or mortgaged by J. Edwin Ellor Sons, Incorporated. Twenty-two of them and the unplotted land, or some part of it, easterly of Ocean avenue to the sea were released by the complainant from the lien of its mortgage. The unplotted lands west of St. Louis avenue *Page 289 
were mortgaged to the VanNote Lumber Company to secure $2,500; and eleven of the lots were mortgaged to that company to secure $5,000.
The matter was referred to a master to report the amount due the complainant and the VanNote Lumber Company, the order of priority and whether the mortgaged premises should be sold together or in parcels, and if in parcels, in what order.
The master reported that there was due the complainant $8,368.78, and that there was due the VanNote Lumber Company $3,291.66 and $4,427.64 on its mortgages respectively. He also reported that after deducting the lots released and the lots conveyed, there remained of the mortgaged premises to the complainant, to be sold in the following order:
(a) The riparian rights.
(b) The unplotted lands east of Ocean avenue.
(c) A strip of land west of St. Louis avenue.
2. The land mortgaged to the VanNote Lumber Company west of St. Louis avenue (and also to make out of this land the amount of the VanNote decree of $3,291.66; and also to make the amount to the VanNote Lumber Company of $4,427.64 out of the lots covered by its $5,000 mortgage).
3 and 4. In case the complainant's debt has not been satisfied by sale of the foregoing, then to make $4,458.05 out of the lots conveyed by the mortgagor to divers vendees, unreleased by the complainant, in the inverse order of their alienation, as set out in the bill of complaint, regardless of whether the vendees were affected by the releases. (The master arrived at the figure $4,458.05 by deducting from the complainant's debt $8,368.78, the value of lots 4, 5 and 9 in block 101, $3,910.73. Lots 4, 5 and 9, as will hereafter appear, were released after notice of conveyances.)
The master found that the lots and the land released by the complainant were released "after actual notice of the rights of these defendants," and he further found that all of these grantees "acquired title by warranty deed for valuable consideration and without actual notice of the complainant's mortgage." *Page 290 
The complainant, and the defendants who are represented by counsel, except to the report. The exceptions are well founded in the following respect:
The master was without authority to report the order of priority of the claims of the complainant and the defendants different from the order in which they are set up in the bill. Rule 187. Shinnen v. Klein, 82 N.J. Eq. 207.
The master went beyond bounds in holding that the complainant released lots "after actual notice of the rights of these defendants." The grantees must plead the detriment of the releases of part of the mortgaged premises to their estate, charging notice. A mortgagee releasing part of mortgaged premises incurs no diminution of the value of his remaining security, unless he has actual notice of conveyance by the mortgagor. The record of the conveyance is not constructive notice; he is not obliged to search the record. Cogswell v. Stout, 32 N.J. Eq. 240.
There was no proof before the master that the complainant had actual notice of conveyances, except upon releasing of lots 4, 5 and 9 in block 101. The complainant concedes releasing lots 4 and 5, but contends that it should not suffer in security for releasing lot number 9, because it was given in substitution of a previously lost release. The record fails to show this. A prior release is referred to, but not established; nor is it shown that it was executed without notice of conveyances. The finding "that the grantees acquired title by warranty deed for valuable consideration and without actual notice of the complainant's mortgage" is an irrelevancy. The complainant's mortgage was of record; they had constructive notice.
The report, that the mortgaged premises included in the VanNote Lumber Company mortgages should be primarily sold, is understandable only upon the theory that the equity is still in the mortgagor. That does not change the order of liability so far as the complainant is concerned. Were the VanNote Lumber Company foreclosing its mortgage, and the mortgagor had conveyed some of the lots, sale by inverse order of alienation would obtain. *Page 291 
The complainant will make its mortgage debt out of all the unreleased lands by sale in the inverse order of alienation, including lands mortgaged to the VanNote Lumber Company; VanNote Lumber Company's mortgages were, and should have been treated as alienations. Mutual Life Insurance Co. v. Dowden,3 Atl. Rep. 351.
However, it appears in the brief of the complainant, and, in some measure, it was before the master, that lots 4, 5 and 9 in block 101, were released after actual notice of grants and conveyances. The admission will be regarded as though the defense had been raised in the pleadings by the parties affected. The values of the three lots released were agreed upon. By these sums the complainant's security will be reduced as against the grantees of affected lots — those whose conveyances preceded the conveyances of lots released. The master's report that all lots conveyed of which the complainant had notice at the time of the releases, including conveyances subsequent to conveyances of lots released, were entitled to the reduction, was clearly erroneous.
The order of sale will be of lands (if any) still remaining in the mortgagor, not released, conveyed or mortgaged; then the remaining unreleased lands in the inverse order of alienation (the VanNote Lumber Company's mortgages to be regarded as alienations) with credits in the order of alienation to the value of lots 4, 5 and 9 as established at the hearing; and credits among the owners of lots 4, 5 and 9 in the order of their alienation. The amounts in their order will be in reduction of the complainant's debt as against the remaining security.
It is difficult to accommodate the description of the master of the land west of St. Louis avenue to the description of the land mortgaged to the complainant and later mortgaged to the VanNote Lumber Company. It may be that there is a small strip remaining to the mortgagor and not included in the VanNote Lumber Company's mortgage. If that be so, it has precedence in the sale as lands remaining in the mortgagor. *Page 292 
It is also trying to reconcile the description of the land easterly of Ocean avenue to the sea with the description of the release. Does the release cover all or part only? The master, it would seem, reported the whole of it should be sold, apparently, as he states, "because the bill of complaint and search show no release of same from complainant's mortgage." The bill distinctly avers a release, and in this respect the master again transcended his duty. He was bound by the allegation of the bill and by rule of the court to report accordingly. Paragraph 8 of the amended bill alleges the release. If the description of the release covers the entire tract, of course, the tract will be eliminated. If it covers only part, that which remains will have precedence in sale.
The defendant Mary F. McDonald, owner of lots 13 and 14 on block 101, for the first time sets up in her exception, and argues, that she erected a dwelling and garage on her lots without actual notice of the complainant's mortgage, and challenges the report because the master failed to reserve the value of the superstructures. The master properly ignored the claim because it was not before him either in pleading or proof; an ex parte affidavit of the facts was submitted. The defense should have been pleaded and the exception in this respect is not presently entertainable. If she will contribute the value of the lots as estimated at the hearing, to be applied if sale of her lots is required to make the complainant's debt in the manner indicated, further litigation may be averted; otherwise, in order that this defendant be not irreparably harmed, leave will be given to answer the bill, setting up the defense, and if it be sustained and the property ordered sold, the sales price will be apportioned as the respective value of the lots and the value of the improvements bear to the sales price.
Counsel will submit the form of decree to his opponents and move for its entry upon notice. *Page 293